UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MARK KOUMENT, JR.,

                Plaintiff,

    -against-                                   **ORDER**
                                                        20 CV 4353 (CLP)

BUY & SELL CARS, INC., et al.,

                Defendants.
------------------------------------------------------------ X
**POLLAK**, Chief United States Magistrate Judge:

On September 16, 2020, plaintiff Mark Koument, Jr. filed this action against Buy & Sell Cars, Inc. ("Buy & Sell") and Mitchell Teitelbaum (collectively, "defendants"), seeking to recover unpaid overtime wages and other damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the New York Labor Law, Art. 6 § 190 et seq., and Art. 19 § 650 et seq., and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 146 (collectively, "NYLL"). The parties have consented to this Court's jurisdiction to determine the fairness of the proposed settlement of this matter.[1]

The parties reached a settlement of this matter, the terms of which are set forth in a Settlement Agreement and Release and Amendment filed with the Court. On June 7, 2021, plaintiff filed a motion requesting that the Court approve the Settlement Agreement, as amended, as fair and reasonable pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016). On June 9, 2021, the Court held a fairness hearing on the motion. For the reasons set forth in this Order, the Court approves the amended agreement as fair and reasonable and approves the attorney's fee.

---

[1] See Consent to Magistrate Judge Disposition, endorsed by the Honorable Kiyo A. Matsumoto on March 16, 2021, 2021, ECF No. 21.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, plaintiff was a sales representative for Buy & Sell, a used car dealership in Elmhurst, New York. (Compl.[2] ¶¶ 9, 18). (Id. ¶¶ 10-12). Defendants employed plaintiff from approximately 1998 until May 20, 2020. (Id. ¶ 18).

Plaintiff claims that he worked an average of 62 hours per week throughout his employment. (Id. ¶ 22). He claims that he was never permitted to leave the premises for meals and was only allowed 15 to 20 minutes for meal breaks, and sometimes less. (Id. ¶ 23). Plaintiff claims that he was mostly paid in cash, although sometimes part of his wages were paid by check. (Id. ¶ 21). He alleges that, from approximately August 2013 to June 2018, he was paid $200 per week plus $150 for each car that he sold that week, for an average of $500 per week. (Id. ¶ 25). He further alleges that, from June 2018 until December 2019, he was paid $250 per week plus $160 for each car sold. (Id. ¶ 26). During this time, defendants paid the plaintiff by check for one week per month, and would deduct $68.67 in withholding taxes from that check. (Id.) Defendants also required plaintiff to pay them $68.67 in cash when he received this check, purportedly as a form of tax withholding. (Id.) Starting in approximately January 2019 until the end of plaintiff's employment on May 20, 2020, plaintiff claims he was paid $250 per week, plus $160 for each car he sold, but did not require him to pay $68.67 or paid him partly by check. (Id. ¶ 27).

Plaintiff further alleges that defendants arbitrarily took unauthorized and improper deductions from his agreed-upon commission rate, at an average of $50 every other week. (Id. ¶¶ 28, 31). Due to the deductions, and the fact that plaintiff sometimes did not sell any cars in a week, he alleges that he was not paid the minimum or overtime wage required by FLSA and

---

[2] Citations to "Compl." refer to the Complaint, filed September 16, 2020, ECF No. 1.

NYLL for some weeks that he worked. (Id. ¶ 31).

Finally, plaintiff alleges the defendants failed to provide required wage statements and wage notices and failed to make required workplace postings regarding the FLSA and NYLL. (Id. ¶¶ 35-37).

DISCUSSION

1. Legal Standards

In considering whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 U.S. Dist. LEXIS 46174, at *1-2 (E.D.N.Y. June 12, 2008) (internal quotation omitted); accord Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation"). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

3

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)). "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at *9. Rather, if the court finds one or more provisions of a FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement. See id at *8.

2. Settlement Terms

The Court finds that the terms of the Settlement Agreement are fair and reasonable. The written agreement contains no impermissible confidentiality or non-disparagement provision. See Souza v. 65 St. Marks Bistro, No. 15 CV 327, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015). Plaintiff's release of claims is limited to wage and hour claims arising from his employment with the defendants (Sett. Agr.[3] ¶ 2), so the release is not impermissibly broad. See Panganiban v. MedEx Diagnostic and Treatment Center, LLC, 15 CV 2588, 2016 WL 927183, at *3 (E.D.N.Y. Mar. 7, 2016).

---

[3] Citations to "Sett. Agr." refer to the Settlement Agreement, filed as Exhibit 1 to the Motion for Settlement Approval, ECF No. 24-1. Although the settlement agreement was later amended with respect to the monetary settlement due to plaintiff and counsel, the terms were otherwise unchanged. (See Amended Motion for Settlement Approval ("Am. Mot."), filed June 7, 2021, ECF No. 26, at 1).

3. Settlement Amount

The amended Settlement Agreement, which was reached after a period of arm's-length bargaining under the auspices of the court-annexed mediation program, proposes a settlement amount of $33,000. (1st Am. Agr.[4] ¶ 1(a)). In reaching this agreement, the parties acknowledge that there were ongoing disputes regarding the plaintiff's claims and the extent of damages to be awarded. (Mot.[5] at 2). Defendants deny that plaintiff worked as many days and hours as he claims, and maintain that he was provided frequent hour-long breaks. (Id.) Defendants further assert that, even though plaintiff was paid in cash, their records show that he was paid more than the minimum hourly rate for each hour that he worked. (Id.)

Plaintiff alleges that he is owed $21,939 in unpaid minimum wages and overtime, and $10,000 for NYLL violations. (Id.) Plaintiffs acknowledge that defendants' business faces an uncertain future as a result of the COVID-19 pandemic, creating a risk that he might not be able to collect on a judgment. (Id. at 3). Under this agreement, plaintiff will receive $21,500. (1st Am. Agr.[6] ¶ 1(a)).

Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing the litigation, and seeing no issues regarding potential fraud or collusion in this case, the Court finds that the settlement reached is fair and reasonable. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

---

[4] Citations to "1st Am. Agr." refer to the First Amendment to the Settlement Agreement and Release, filed June 7, 2021, ECF No. 26-1

[5] Citations to "Mot." refer to the Motion for Hearing re. Settlement, filed April 26, 2021, ECF No. 24.

[6] Citations to "1st Am. Agr." refer to the First Amendment to the Settlement Agreement and Release, filed June 7, 2021, ECF No. 26-1

4. Attorney's Fees and Costs

The Second Circuit has set forth six factors to determine whether attorney's fees in FLSA settlements are reasonable: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Courts employ the "lodestar" method in determining whether attorney's fees are reasonable, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

Courts in this Circuit have addressed the issue of applying a multiplier to the lodestar calculation. In one case, the Honorable William H. Pauley III concluded that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014). In reaching this decision, Judge Pauley examined the case law of this Circuit and noted that courts "have generally refused multipliers as high as 2.03.'" Id. at 438 (quoting In re Currency Conversion, 263 F.R.D. 110, 129 (S.D.N.Y. 2009)); see also Velandia v. Serendipity 3, Inc., No.

16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

Instead of using the lodestar method, courts may employ the "percentage of the fund" method.  See McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).  With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable.  Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases).  However, a one-third percentage may be "simply too great" in relation to the work performed.  Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

In FLSA cases, regardless of the method used, "'[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.'"  Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)).  Courts in this Circuit have declined to approve the award of attorney's fees when the lodestar or the percentage of the settlement that counsel sought appeared unreasonable.

Here, plaintiff's counsel seeks one-third of the total settlement, plus costs, for a total of $11,500.  (Am. Mot. at 1).  Counsel states that over 29.5 hours have been expended on this matter to date, amounting to more than $11,062.50 in fees incurred.  (Id.; Mot. at 5).  The resulting lodestar multiplier is 1.04.  As plaintiff's counsel is requesting one-third of the settlement, a percentage typically found reasonable in this Circuit, upon review of the parties'

7

submission and consideration of the Goldberger factors set forth above, the Court finds that the requested fee is reasonable.

## CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submission, the Court finds that the settlement reached is a fair and reasonable compromise of plaintiff's claims, considering the amount received, the issues of potential liability that might have limited recovery, and the fact that the parties engaged in arms' length negotiations between experienced counsel, sufficient to gain an understanding of the risks and benefits of proceeding with the litigation. Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 335 (examining the factors courts consider when approving FLSA settlement agreements). The Court also finds that counsel's request for fees and costs is reasonable.

The parties are directed to file a stipulation of dismissal within 30 days of the date of this Order.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
June 15, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York